Howard A. Zeller, J.
In this action plaintiffs seek a judgment (1) declaring a water assessment to be an invalid tax on the Oneida Indian Reservation, (2) requesting the City of Oneida be enjoined from shutting off the water to the reservation for nonpayment of the water -assessment, and (3) declaring the water main to he on reservation property.
In 1964 the City of Oneida issued municipal bonds to pay for an addition to its water -system which it extended to a section of the city generally known as the West Road. To help amortize the bonds the city levied a $48 annual assessment on each parcel of land adjoining the water main extension. This annual assessment is expected to continue for 30 years. *1079 The Oneida Indian Beservation borders on the West Boad where part of the water main extension is located.
In 1965, one of the plaintiffs, Mary Schenandoah, signed an application for a supply of water, paid the city Water Department a water meter fee and had water piped into the house she occupies on the reservation. Since then the water meter reading charges have been paid.
Plaintiffs, all Indians, claim the $48 annual assessment is in fact a tax on an Indian reservation and hence illegal, invalid and void.
Plaintiffs have now moved for summary judgment claiming there are no questions of fact which require a trial and that they are entitled to the judgment they .seek upon the affidavits and other papers submitted to me. The city opposes the action as well as the motion for summary judgment. The city denies the existence of the Indian reservation and contends that if it does exist the $48 annual charge against the reservation is not a tax.
'Some historical background should be noted. The Oneida Indian tribe was in possession and occupation of all the land in and around the territory which is now the City of Oneida at the time of the discovery of America. During colonial history the tribe was a member of the confederated Iroquois Indian nation. It was the Oneida Indian tribe which defeated Samuel De Champlain and his forces in the year 1615 at the battle of Nichols Pond located between the present cities of Oneida and Syracuse, thus helping to prevent domination by the French of the vast area south of the Saint Lawrence Biver. Although some Indian tribes sided with the English Crown during the Bevolutionary War the Oneidas assisted the colonists. By treaties of 1784 the Confederacy of the United States confirmed the right of the Oneidas to be secure in the possession “ of the lands on which they are .settled ”. Ten years later in 1794 the rights of the Oneida Indians to “ lands reserved ” to them was acknowledged in a treaty between the United States and the six Iroquois nations.
About 1840 many of the Oneida Indians moved from the Oneida reservation in New York State to Green Bay, Wisconsin. These immigrations were regulated and supervised by the United States Government. In May, 1842 a treaty was entered into between the State of New York and the Oneida Indians in which some of the reservation lands were ceded to the State of New York but certain designated parcels were retained by the Oneida Indians. The remaining portion of these parcels is now the Oneida Indian Beservation which borders a portion of the West Boad in the City of Oneida.
*1080 Special legislation applies to Indian reservations. For instance, .section 6 of the Indian Law of New York State reads: “ No taxes shall be assessed, for any purpose whatever, upon any Indian reservation in this state, so long as the land of such reservation .shall remain the property of the nation, tribe or band occupying the same.”
Section 177 of title -25 of the United States Code is derived from a law of the Congress of the United States'first enacted in 1834. Presently it reads, in part: “No purchase, grant, lease or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution.”
A prime objective of these treaties and laws is to preserve for Indians some of the lands freely roamed by their ancestors.
In 1919 and 1920 courts of the United States decided that the land against which the water assessment has been made was an Indian reservation and that the Oneida Indians constituted a nation, tribe or band (United States v. Boylan, 256 F. 468, affd. 265 F. 165). In that case the United States District Court Judge wrote, in part (p. 488): “If the right to protection
exists at all, it ought to survive so long as a single Indian entitled thereto invokes it and remains on the reservation, and in my judgment it is entirely immaterial whether that reservation has been reduced from thousands of acres to one or one hundred acres.” In the same case the United States Circuit Court of Appeals, Second District, stated (p. 171): “Accordingly it has been held that it is for Congress to say when the tribal existence shall be deemed to have terminated, and Congress must so express its intent in relation thereto in clear terms. ’ ’
The proof submitted on this motion indicates that the Oneida Indian Reservation does now exist and that there is an Oneida Indian tribe.
The city contends the yearly charge against the real property is not a tax but an assessment. It matters not what label is put upon this annual charge; the controlling factor is the possible result of this annual charge. If this annual water charge is not paid, the city may add the amount to the delinquent tax list and eventually attempt to sell the reservation at a tax sale. To do so would be contrary to public policy and legislation, and thus it is determined the $48 annual assessment is a tax which the city may not levy on the Oneida Indian Reservation. This determination assures the continued territorial integrity of the reservation.
*1081 Next to be considered is plaintiffs’ request that the city be prohibited from shutting off the water for nonpayment of the annual $48 water assessment. The only plaintiff who applied to the city for a supply of water was Mary Schenandoah. In her written application dated June 17, 1965 she agreed to pay for the bond issue and ‘ ‘ to comply with all the rules of the Water Department ”. There is nothing in the papers on this motion to establish that her application was made on behalf of the Oneida Indian tribe. Mrs. Schenandoah’s affidavits state the water was connected to ‘1 my residence ’ ’ and if it be shut off “ I will suffer immediate injury, to wit: the total loss of water ”. (Some other plaintiffs do state they get water by bucket from the Schenandoah residence.) However, the contract is between Mary Schenandoah and the city and it is she who personally agreed to pay for the “ bond issue ” and abide by the Water Department rules. Unless she does as she agreed the city is not obligated to continue to furnish a supply of water to her residence. This determination is a judicial refusal to relieve an individual plaintiff of the consequence of her refusal to abide by her personal contractual obligation.
Plaintiffs’ motion for partial summary judgment is directed only to their first cause of action. It should be granted to the extent of declaring the annual water assessment to be an invalid real property tax on the Oneida Indian Reservation. In all other respects it should be denied and defendants should be granted summary judgment dismissing on the merits that part of the first cause of action which in effect requests the city be restrained from shutting off the water supply to the Schenandoah residence located on the Oneida Indian Reservation for nonpayment of the annual water assessment of $48. (CPLR 3212, subd. [b].)
No motion has been addressed to the second cause of action which demands judgment declaring the West Road water main is located on the Oneida Indian Reservation. Plaintiffs’ request that this cause of action be severed should be granted.